# Exhibit 1

FILED IN CHAMBERS
U.S.D.C. Atlanta

# ORIGINAL

JUN 12 2009

JAMES N. HATTEN, Clerk
By Pmu) Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL INFORMATION |
| v. | : | |
| | : | NO. 1:09-CR-278 |
| MARK L. HARRISON and | : | |
| HARRISON INTERNATIONAL, LLC | : | |

THE UNITED STATES ATTORNEY CHARGES THAT:

## INTRODUCTORY ALLEGATIONS

The following statements were true at all times pertinent to this Information:

A.  THE DEFENDANTS

1.  Defendant HARRISON INTERNATIONAL, LLC, was a Florida limited liability corporation incorporated on or about March 3, 2005, located at 13408 Prosper Road, Southport, Florida.

2.  Defendant MARK LEON HARRISON ["HARRISON"] was the owner, incorporator, registered agent, and manager of HARRISON INTERNATIONAL, LLC, and a resident of Southport, Florida.

3.  HARRISON and HARRISON INTERNATIONAL, LLC, were engaged in the business of buying, acquiring, transporting, processing (including drying), selling and exporting, through the Northern District of Georgia and elsewhere, shark fins.

4.  HARRISON represented himself to be the nation's largest

shark fin buyer, purchasing "millions" of shark fins over the years since 1989 that he had been in the business.

5.   HARRISON held, from July 2003 until at least June 2008, a license from the State of Florida to deal in shark fins.

B.   THE LAWS

6.   The Lacey Act makes it unlawful for a person to export, transport, sell, receive, acquire or purchase in interstate or foreign commerce any fish, including any shark or part thereof, taken, possessed, transported or sold in violation of any law or regulation of any State that regulates the taking, possession, importation, exportation, transportation or sale of fish.   16 U.S.C. § 3372(a)(2)(A).   "Person" is defined to include both individuals and corporations.   16 U.S.C. § 3371(e).

7.   Florida law makes it unlawful for any person or corporation to buy and sell saltwater products, including sharks, in Florida without first obtaining a state dealer's license to do so.   Fla. Stat. Ann. § 370.07.

8.   The State of Florida regulates its fisheries based on information gained, in part, from data required to be submitted by, among others, persons and corporations who hold dealer's licenses for saltwater fish, including sharks.   This data is required to include, among other things, the seller's license number, the

2

dealer's license number, the date of sale, exchange, barter, distribution or landing, the duration of the fishing trip, the species, the amount, the gear used, the area fished and the price per pound. Fla. Admin. Code Ann. r. 68E-5.003.

9.    The required data must be reported to the Florida Fish and Wildlife Conservation Commission ("Commission") on a marine fisheries trip ticket supplied by the Commission, or an approved alternative form, whenever saltwater fish, including sharks, are first sold, exchanged, bartered, distributed or landed.  Where the saltwater fish are sold, exchanged, bartered or distributed initially to a wholesale dealer, the required report must be filed by that dealer.   The required data must be submitted at least monthly and maintained by the person reporting for three years. Fla. Admin. Code Ann. r. 68E-5.002.

10.    Effective March 9, 2006, it is prohibited for any person in the State of Florida to harvest, possess, land, purchase, sell, or exchange any dusky sharks (*Carcharhinus obscurus*), night sharks (*Carcharhinus signatus*), Caribbean reef sharks (*Carcharhinus perezii*), and bignose sharks (*Carcharhinus altimus*).   Fla. Admin. Code Ann. r. 68B-44.008.  Florida instituted these protections to help reduce fishing mortality on species of sharks believed to be rare or in need of further protection.   The protections are

3

intended to rebuild the spawning stock and prevent these important resources from becoming endangered.

11.   Federal regulations make it unlawful to retain, possess, sell or purchase a federally prohibited shark, or parts or pieces thereof.   50 C.F.R. § 635.71(d)(10).   Federally prohibited sharks include   dusky   sharks   (Carcharhinus   obscurus),   night   sharks (Carcharhinus   signatus),   Caribbean   reef   sharks   (Carcharhinus perezii), Caribbean sharpnose sharks (Rhizoprionodon porosus), and bignose sharks (Carcharhinus altimus).   50 C.F.R. pt. 635, Appendix A,   Table 1, D.    These regulations were implemented because the populations were not found to be able to withstand some fishing mortality.    Atlantic Highly Migratory Species (HMS) Fisheries, Fishery  Management  Plan,  Plan  Amendment,  and  Consolidation  of Regulations, 64 Fed. Reg. 3159 (Jan. 20, 1999)(codified at 50 C.F.R. pt. 635).   Dusky sharks in particular had seen significant population declines and have a low reproductive rate.   Atlantic Highly Migratory Species (HMS) Fisheries, Fishery Management Plan, Plan Amendment, and Consolidation of Regulations, 64 Fed. Reg. 29109 (May 28, 1999)(codified at 50 C.F.R. pt. 635).

12.   The Federal Food Drug and Cosmetic Act, Title 21, United States   Code,   Section   301   et   seq.   ["FDCA"],   prohibits   the introduction or delivery for introduction into interstate commerce

4

of any food that is adulterated.  21 U.S.C. § 331(a).

13.  The term "food" for purposes of the FDCA includes articles used for food or drink for man or other animals.  21 U.S.C. § 321(f).

14.  A food is "adulterated" if it has been prepared, packed, or held under insanitary condition whereby it may have become contaminated with filth or whereby it may have been rendered injurious to health.  21 U.S.C. § 342(a)(4).

C.  THE FACTS

15.  On or about February 20, 2005, HARRISON purchased shark fins directly from an individual fisherman in Florida.  Harrison's wholesale purchase price of the fins was $320; the fair market retail value was less than $2000.

16.  No report of the landing or sale of those shark fins was filed with any Florida authorities.

17.  HARRISON and HARRISON INTERNATIONAL, LLC, sometime between on or about February 20, 2005, and on or about September 2008, sold the shark fins HARRISON had purchased on or about February 20, 2005, and transported, and caused to be transported, the fins, through the Northern District of Georgia to the buyer.

18.  On or about August 14, 2007, HARRISON attempted to export from the United States through Atlanta a shipment of shark fins

that included at least 211 fins from Caribbean sharp-nosed sharks (*Rhizoprionodon porosus*), 2 fins from bignose sharks (*Carcharhinus altimus*), and 2 fins from night sharks (*Carcharhinus signatus*), with a fair market retail value of more than $2,000, but not more than $5,000.

19. Between on or about April 1, 2004 and at least February 2008, HARRISON processed shark fins by drying them on open air racks and/or tarpaulins laid on the ground, outdoors on his property in Southport, Florida. The fins were left out at all times until dry and were exposed to bird droppings and insects. Dogs ran freely among the drying racks.

20. Shark fins documented as having been dried, or being dried, on or about August 14, 2007, on HARRISON's property, had, among other things, bird droppings and dead insects on them, and insect larvae in them.

21. Between on or about February 1, 2004, and at least February 2008, HARRISON dried all the shark fins he purchased in the manner described above and then shipped or transported them, and caused them to be shipped and transported, in interstate and foreign commerce, via Atlanta, Georgia.

These Introductory Allegations are hereby re-alleged and incorporated by reference into each and every count of this

6

Information.

## COUNT ONE

On or about approximately February 20, 2004, in the Northern District of Georgia and elsewhere, the defendants,

MARK L. HARRISON and

HARRISON INTERNATIONAL, LLC,

did knowingly transport and sell fish, specifically shark fins, in interstate and foreign commerce, when defendants should have known in the exercise of due care that the fish had been sold for $320 in violation of and in a manner unlawful under Florida law, specifically Florida Administrative Code, Sections 68E-5.002 and 5.005, in that statistical information on the production of the shark fins was not reported from this initial sale.

All in violation of Title 16, United States Code, Sections 3372(a)(2)(A) and 3373(d)(2).

## COUNT TWO

Between on or about August 14, 2007, and on or about September 2008, in the Northern District of Georgia and elsewhere, the defendant,

MARK L. HARRISON,

did knowingly attempt to export a shipment of fish, specifically shark fins, in interstate and foreign commerce, when defendant

7

should have known in the exercise of due care that some of the fish, had been taken, possessed and sold in violation of and in a manner unlawful under Florida law, specifically Florida Administrative Code § 68B-44.008, in that, some of the shark fins were species the harvest, possession and sale of which were prohibited under Florida law.

All in violation of Title 16, United States Code, Sections 3372(a)(2)(A), 3372(a)(4), and 3373(d)(2).

## COUNT THREE

On or about and between at least April 1, 2004 and February 2008, in the Northern District of Georgia and elsewhere, the defendant,

### MARK L. HARRISON,

introduced and caused the introduction into interstate commerce from Florida, through the Northern District of Georgia, to California of food that was adulterated, in that, it had been prepared, packed, and held under insanitary conditions, whereby it became contaminated with filth.

All in violation of Title 21, United States Code, Sections

331(a), 333(a)(1), and 342(a).

DAVID E. NAHMIAS
UNITED STATES ATTORNEY

MARY C. ROEMER
ASSISTANT UNITED STATES ATTORNEY

600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, Georgia   30303
404/581-6265
Georgia Bar No. 611790

ELINOR L. COLBOURN
SENIOR TRIAL ATTORNEY

Environmental Crimes Section
Environment and Natural Resources Division
Department of Justice
601 D Street, N.W.
Washington, D.C.   20004
202/305-0205

9

**FILED IN CHAMBERS**
**U.S.D.C. Atlanta**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SEP 0 1 2009

JAMES N. HATTEN, Clerk

By ꝑ𝓶𝓾𝓿

Deputy Clerk

UNITED STATES OF AMERICA

-vs-

Case No. 1:09-CR-278-RGV

MARK L. HARRISON

Defendant's Attorney:
ROBIN LOEB & DONALD SAMUEL

## JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

The defendant plead guilty to Counts 1, 2 and 3 of the Information.

Accordingly, the defendant is adjudged guilty of such count(s) which involves the following offense:

| Title & Section | Nature of Offense | Count No. |
|---|---|---|
| 16 U.S.C. §§ 3372(a)(2)(A) & 3373(d)(2) | Transport and Selling Fish | 1 |
| 16 U.S.C. §§ 3372(a)(2)(A), 3372(a)(4) & 3373 (d)(2) | Exporting a Shipment of Fish | 2 |
| 21 U.S.C. §§ 331(a), 333(a) & 342(a) | Causing Interstate Shipment of Adulterated Food | 3 |

The defendant is sentenced as provided in pages 2 through 4 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant shall pay the special assessment of $75.00 which shall be due immediately.

**IT IS FURTHER ORDERED** that the defendant shall notify the United States attorney for this district within thirty days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.
Defendant's Date of Birth:
Defendant's Mailing Address: South Port, FL

Date of Imposition of Sentence:
August 19, 2009

Signed this the ___1st___ day of September, 2009.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

1:09-CR-278-RGV : MARK L. HARRISON

# PROBATION

The defendant is hereby placed on supervised probation for a term of 5 (FIVE) YEARS.

The defendant shall pay any financial penalty that is imposed by this judgment.

The defendant shall participate in the following home confinement detention program for a period of 120 days and abide by all the requirements of the program which will include electronic monitoring or other location verification system. The defendant shall pay all or part of the costs of the program based upon your ability to pay as determined by the probation officer. The defendant shall be restricted to his residence at all times except for employment, education, religious services, medical, substance abuse, or mental health treatment, attorney visits, court appearance, court-ordered obligations, or other activities as pre-approved by the probation officer.

The defendant shall not engage, directly or indirectly, in activities related in any way to sharks or parts or products thereof, in any capacity, including, but not limited to, employment, trade, buying or selling shipping, transporting, acquiring, possessing, research or volunteer activities.

The defendant shall perform 150 hours of community service work.

The defendant will take out, within the first three months of probation, a one-half page, black and white, advertisement with the wording as set forth in Attachment A to the plea agreement, in a publication of wide circulation within the fish industry, subject to the approval of the government.

The defendant shall not commit another federal, state or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of placement on probation and at least two periodic drug tests thereafter, as directed by the probation officer.

        ☐       the above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if appropriate.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of probation that the defendant pay any such fine or restitution in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall also comply with the additional conditions of the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district where he resides without the permission of the court or probation office;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instruction s of the probation officer;

4) the defendant shall support his or her dependants and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10)     the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer:

11)     the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)     the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13)     as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

1:09-CR-278-RGV : MARK L. HARRISON

# FINE

The defendant shall pay a fine of $ 5,000.00 (FIVE THOUSAND DOLLARS).

This fine includes any costs of incarceration and supervision.

This fine (plus any interest required) shall be paid in monthly installments of $85.00 per month over a period of 59 months to commence 30 days after the date of this judgment.

As per the terms of the plea agreement, the defendant agrees to pay one half of the total fine amount, into account number 26L7E02, established by the National Oceanic & Atmospheric Act, Office of the General Counsel, pursuant to 18 U.S.C. § 1861(e); and one half of the total fine amount into Fund 122X, Organizational Code 99000, established through the United States Fish and Wildlife Service, Division of Financial Management/Denver Operations, Cost Accounting, P.O. Box 272065, Denver, Colorado 80227.

If the fine is not paid, the court may sentence this defendant to any sentence which might have been originally imposed. See 18 USC 3614.